IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY BALLARD,  :
 :
    Plaintiff  :
 :
  v.  :  CIVIL NO. 4:CV-14-1015
 :
KATHY GALLE, ET AL.,  :  (Judge Brann)
 :
    Defendants  :

**MEMORANDUM**

August 25, 2015

**Background**

    Anthony Ballard filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 regarding his confinement at the Schuylkill County Prison, Pottsville, Pennsylvania. By Memorandum and Order dated May 1, 2015, Defendants Catherine Becker, LPN and Elaina Galle-Harris, LPN's joint unopposed motion to dismiss the Complaint was granted.

    Remaining Defendants are Schuylkill County, and the following employees of the Schuylkill County Prison: Warden Gene Berdanier, Deputy Warden Dave Wapinsky, and Captain William Flannery. Remaining Defendants have filed a motion to dismiss or in the alternative for summary judgment. See Doc. 17. The

1

motion is unopposed.

According to the Complaint, Plaintiff was forced to sleep on a mattress on the floor of his cell near the toilet from June 12, 2013 until July 14, 2013. Ballard states that this requests to be moved were denied despite his complaints of suffering neck and back pain. Plaintiff, an African American, also concludes that his two white cell mates were given preferential treatment because he was the one required to sleep on the floor.

The Complaint further alleges that between February 20-25, 2014, Plaintiff was denied proper medical care after becoming ill with the flu.[1] See Doc. 1, ¶ IV(2). Plaintiff asserts that he became sick because his cell window wouldn't close. Ballard indicates that his temperature reached as high as 103 degrees and required him to be quarantined. He seeks injunctive relief and monetary damages.

**Discussion**

Remaining Defendants claim entitlement to relief on the grounds that: (1) the Complaint fails to sufficiently allege that he was subjected to unconstitutional conditions of confinement; (2) there are no assertions that Remaining Defendants were personally involved in the alleged constitutional violations; (3) Remaining

---

[1] Plaintiff also indicates that he caught the flu because his cell window wouldn't close.

Defendants are entitled to qualified immunity; (4) there is no basis for liability against Defendant Schuylkill County; and (5) Plaintiff failed to exhaust his available administrative remedies.

**<u>Motion to Dismiss</u>**

Remaining Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Remaining Defendants' motion. Thus, their motion will be treated as solely seeking summary judgment. See <u>Latham v. United States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its]

4

own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Monell**

Remaining Defendants assert that Plaintiff fails to allege any facts which would satisfy the requirements of Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978) and therefore a viable claim has not been raised against Defendant Schuylkill County. See Doc. 18, p. 17. The argument is unopposed.

A municipal body or other local governmental unit, not part of a state for Eleventh Amendment purposes, may be a "person" subject to suit under 42 U.S.C. § 1983 Monel, 436 U.S. at 690-91 ("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983

applies.") "Local governing bodies, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. See also Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 398, 403-07 (1997); Roman v. Jeffes, 904 F.2d 192, 196-97 (3d Cir. 1990); Illiano v. Clay Township, 892 F. Supp. 117, 121 (E.D. Pa. 1995).

However, it has been repeatedly held that a local government unit may not be subjected to § 1983 liability on a theory of respondeat superior. Bryan County, 520 U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 392 (1989); Pembaur v. Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 691; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, "... a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bryan County, 520 U.S. at 403; Beck, 89 F.3d at 971. In Bryan County, the United States Supreme Court elaborated on the showing required for municipal liability under § 1983, stating:

> . . . [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the

> 'moving force' behind the injury alleged. That is, a
> plaintiff must show that the municipal action was taken
> with the requisite degree of culpability and must
> demonstrate a direct causal link between the municipal
> action and the deprivation of federal rights.

Id. at 404; see Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).

The United States Court of Appeals for the Third Circuit has held that a local government unit can be held liable under § 1983 "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews, 895 F.2d at 1480 (citing Monell, 436 U.S. at 694). Custom can be established by proof of knowledge and acquiescence. Fletcher v. O'Donnell, 867 F. 2d 791, 793-4 (3d Cir. 1989).

With respect to Schuylkill County, Remaining Defendants argue that "the Complaint fails to make any allegations whatsoever to give rise to municipal liability under Monell." Doc. 18, p. 19. Based upon a review of the Complaint, this Court agrees that there is no discernible contention that Plaintiff's constitutional rights were violated as the result of any existing formal county policy. Additionally, there are no facts alleged which would show that the challenged conditions of the prison (broken window, having to sleep on a mattress on the floor for a month) existed on a systematic basis. As such, this is not a case

where liability is being asserted based upon wide spread conditions or customs so common as to infer official knowledge and adoption of the violation. Based upon those considerations, this Court agrees with the unopposed argument that a viable claim has not been set forth against Defendant Schuylkill County.

**Personal Involvement**

Remaining Defendants next assert that the Complaint fails to allege personal involvement "in the cell assignment or in the maintenance of the prison " or state that they engaged in any unconstitutional conduct. Doc. 18, p. 13. It is again noted that this argument is unopposed.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials,

546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Warden Berdanier, Deputy Warden Wapinsky and Captain Flannery are each clearly employed in supervisory capacities within the prison. There is no assertion that any of those officials directed that Ballard be required to sleep on a mattress on the floor of his cell. However, the Complaint does clearly contend that Captain Flannery became aware of Plaintiff's sleeping assignment and allowed that condition to continue. See Doc. 1, ¶IV(1). As such, the Rode personal involvement requirement has been satisfied with respect to Flannery.

With respect to Plaintiff's remaining contention that he became ill with the flu for a five day period in February 2014 because his cell window wouldn't close, there are no factual allegations set forth in the Complaint which could support a claim that any of the Remaining Defendants were aware that Ballard was being housed in a cell with a malfunctioning window. Since the only contention by Plaintiff is that he informed a maintenance person about the broken window, entry of dismissal in favor of the Remaining Defendants on the grounds of lack of

9

personal involvement with respect to this portion of the Complaint is appropriate.

It is also possible that Plaintiff may be attempting to establish liability against Berdanier and Wapinsky due to their responses or non-response to his administrative grievances or complaints. Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against Remaining Defendants based upon their handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925

(3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the above discussion the request for entry of dismissal on the basis of lack of personal involvement will be granted in favor of Warden Berdanier and Deputy Warden Wapinsky. Dismissal will also be granted in part with respect to Captain Flannery. However, the claim that Defendant Flannery directed the prisoner to remain sleeping on the floor of his cell despite the prisoner's complaints of back and neck pain sufficiently satisfies the requirements of Rode and is not subject to dismissal on that basis.

**Administrative Exhaustion**

Remaining Defendants next contend that Plaintiff "failed to initiate and exhaust the grievance procedure." Doc. 18, p. 20. As previously discussed, this argument is unopposed. Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 127 S.Ct. 910, 923 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner

compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

Remaining Defendants state that the Schuylkill County Prison has "a comprehensive administrative procedure which provides for review of administrative grievances." Doc. 18, p. 22. A written grievance may be submitted to the Grievance Coordinator within thirty (30) working days after the events upon which the claims are based. The Deputy Warden serves as the prison's Grievance Coordinator and provides the initial response to the grievance. If dissatisfied with the initial response, an inmate may file an appeal with the Warden within ten (10) days after issuance the Deputy Warden's response. The Warden's decision is not administratively appealable. Remaining Defendants have also submitted for consideration a copy of the prison's written grievance policy. See Doc. 19-1, Exhibit A.

They also point out that Plaintiff was aware of the grievance procedure. In fact, the summary judgment request notes that during the course of his confinement in the Schuylkill County Prison Plaintiff filed a grievance on June 17,

2014 which related to a 24 hour lock up he received.  Since that grievance was unrelated to the claims pending before this Court, Remaining Defendants conclude that this matter should be dismissed on the basis of non-exhaustion.  A copy of the grievance filed by Plaintiff has been submitted for review.  See  Doc. 19-2

In support of their non-exhaustion argument, Remaining Defendants have also submitted an affidavit from Deputy Warden David Wapinsky who acted as the prison's Grievance Coordinator during the relevant time period.  See Doc. 19.  Wapinsky clearly states that Plaintiff "failed to exhaust the grievance procedure with regard to the claims asserted in his Complaint."  Id. at ¶ 10.  The affidavit states that no grievance was initiated by Ballared regarding having to sleep on the floor on a mattress from June 12, 2013 to July 14, 2013 or with respect to a malfunctioning window in February 2014.

The undisputed record establishes that the Schulkill County had an established grievance procedure in place during the relevant time period.  In addition, Plaintiff was aware of the procedure and pursued an unrelated grievance.  Third, Ballard failed to file a grievance relating to any of his pending claims against the Remaining Defendants.  Based upon those factors as well as  Plaintiff's failure to oppose the request for summary judgment, a finding of non-exhaustion and entry of summary judgment in favor of the Remaining Defendants under the well settled Spruill and Woodford standards is appropriate.

**Conclusion**

Pursuant to the above discussion, Remaining Defendants' unopposed request for of summary judgment should be granted.   In light of that conclusion a discussion of the Remaining Defendants' additional arguments of qualified immunity and failure to set forth a viable unconstitutional conditions of confinement claim is not required.  An appropriate Order will enter.

BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge